IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **RUBEN ORTEGA, JR.,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | NO.  EP-20-CV-00171-MAT | |
| § | | |
| **KILOLO KIJAKAZI,** § | | |
| **Commissioner of** § | | |
| **the Social Security** § | | |
| **Administration,**[1] § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

The instant case is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Ruben Ortega ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Social Security disability benefits. (ECF No. 4, p. 1). The parties consented to the transfer of the case to this Court for determination and entry of judgment. (ECF No. 1-4, p. 1); (ECF No. 14, p. 1); *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision denying benefits will be **AFFIRMED**.

### I.      BACKGROUND

#### A.  Procedural Background

Plaintiff applied for disability insurance benefits on September 16, 2016, alleging disability beginning on July 25, 2016. (ECF No. 17, p. 1); (R. 12).  Plaintiff was fifty-six years old at the alleged onset, and his past relevant work included warehouse associate, forklift operator, and material handler. (R. 19, 60).

---

[1] Kilolo Kijakazi replaced former Commissioner Andrew Saul to become the Acting Commissioner of the Social Security Administration in July 2021. *See Acting Commissioner: Dr. Kilolo Kijakazi*, SOCIAL SECURITY, https://www.ssa.gov/agency/commissioner/ (last visited Sep. 3, 2021).

After the Commissioner denied his initial application on November 14, 2016, and then denied the reconsideration, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). (R. 12, 95). At the February 26, 2018 hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert. (R. 95). In the resulting August 14, 2018 opinion, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 102). Plaintiff then requested Appeals Council review. (R. 108-09).

The Appeals Counsel vacated the decision and remanded the matter to the ALJ for further proceedings. *Id.* Specifically, on April 26, 2019, the Appeals Council directed the ALJ to further investigate Plaintiff's past relevant work, and his capacity to do past relevant work. (R. 108). Consequently, the ALJ held another hearing on August 23, 2019, again taking testimony from Plaintiff and a vocational expert. (R. 56-73). On September 13, 2019, the ALJ's written decision found that Plaintiff was not disabled, "based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and transferable work skills." (R. 23). The Appeals Council denied Plaintiff's request for review of the second ALJ decision, thereby making the ALJ's September 13, 2019 decision the Commissioner's final administrative decision. (R. 1). Plaintiff filed his Complaint on June 18, 2020. (ECF No. 4).

**B. Standard of Review**

Judicial review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v.*

*Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Spellman*, 1 F.3d at 360. Fifth Circuit precedent directs the reviewing district court to apply the harmless error standard in Social Security disability cases, and Plaintiff bears the burden of showing that harmful error warrants remand. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

    C. **Commissioner's Evaluation Process**

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is presently engaged in substantial gainful employment; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from performing other substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

Courts employ four elements of proof to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 462; 20 C.F.R. § 1520(b-f). A court may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Indeed, it is the Commissioner, not the court, who must resolve evidentiary conflicts. *Spellman*, 1 F.3d at 360.

**D. The ALJ's Findings**

In his written decision, the ALJ analyzed Plaintiff's disability application under the five-step evaluation process. (R. 12-23). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 25, 2016. (R. 14). Second, the ALJ found Plaintiff's only severe impairment to be the mild degenerative changes of the lumbar spine. *Id.*[2] Third, Plaintiff was not found to have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 17). Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, concluding that Plaintiff "has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R 404.1567(b)," and furthermore "is capable of performing work-related activities such as walking, standing, sitting, lifting, and carrying, as well as the basic mental abilities required for sustained work activity." (R. 18, 21). The ALJ then proceeded to step four, and found that Plaintiff was unable to perform any past relevant work. (R. 22).

Finally, at step five, the ALJ determined that Plaintiff had acquired work skills transferable to other jobs existing in the national economy. (R. 22, 23). Therefore, the ALJ found that "[b]ased on a [RFC] for the full range of light work, considering the claimant's age, education, and transferable work skills, a finding of 'not disabled' is reached by the direct application of the Medical-Vocational Rule 202.07." (R. 23). Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 25, 2016, through the date of this decision" pursuant to 20 C.F.R. § 404.1520(g). (R. 23).

## II.   ANALYSIS

In this appeal, Plaintiff argues that the ALJ's residual functional capacity ("RFC")

---

[2] The ALJ declined to find that the following medical conditions constituted severe impairments: gastroesophageal reflux disease (GERD), mood disorder, left-finger fracture, and frontal lobe atrophy. (R. 15).

determination is not supported by substantial evidence. (ECF No. 17, p. 2). Plaintiff first alleges that the RFC is not supported by substantial evidence because the ALJ disregarded evidence that Plaintiff's lumbago and mental impairments were severe impairments. *Id.* at 2-4.[3] He further contends that the ALJ failed to consider Plaintiff's ability to perform sustained work on a regular and continuing basis. *Id.* at 5. The Commissioner argues that Plaintiff has not shown that the ALJ committed reversible error in the step two analysis of severe impairment, and that substantial evidence supports the ALJ's RFC finding. (ECF No. 20, p. 1, 7).

An individual's RFC is the most the individual can do on a regular and continuing basis despite limitations due to the impairment. 20 C.F.R. § 404.1545(a); SSR 96-8p. An RFC finding is not a medical determination, but rather an administrative assessment based on all relevant evidence. *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). All medically determinable impairments will be considered in the RFC assessment, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2). An RFC finding is used to determine whether the claimant can still do his past work. *Perez*, 415 F.3d at 462. If not, then the RFC finding is used to assess whether the claimant can do other jobs in the national economy. *Id.*

The Court will address each argument Plaintiff raises in turn below.

---

[3] While Plaintiff begins by contending that his lumbago and mental impairments are "severe," the substance of his brief does not address "severe" impairments as a term of art in the Social Security context. (ECF No. 17, p. 2). Rather, Plaintiff's analysis largely concerns the RFC determination in the context of substantial evidence review, and thus the Court structures this Opinion under that framework. (ECF. No. 17, p. 3-6). The Court notes that when an ALJ does not find a claimant's condition to be severe, but does continue the analysis to discuss and include the condition in the claimant's RFC, any step two error is deemed harmless. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) ("Even if an impairment is deemed 'severe' ... this fact does not require a remand when the Secretary has gone beyond the second step, as here, as not all 'severe' impairments are disabling."). Here, the ALJ did consider whether Plaintiff's lumbago and mental health conditions were severe impairments at step two, and after review of the record concluded that Plaintiff's low back condition was severe, but mental health impairments were not severe. (R. 16-17). The ALJ then considered these, along with other impairments, when formulating the light work RFC. (R. 18-21). Thus, the Court finds that any alleged error at step two is harmless.

5

### A. Substantial evidence supports the RFC determination because the ALJ did not disregard medical evidence of lumbago.

Plaintiff argues that the ALJ failed to incorporate medical evidence of lumbago as a severe impairment, and as such the RFC analysis is flawed. (ECF No. 17, p. 2-3). At the outset, the Court notes that the ALJ found that Plaintiff's mild degenerative changes of the lumbar spine were severe, and thus Plaintiff has a severe low back impairment. (ECF No. 20, p. 2); (R. 14). However, Plaintiff does not cite any authority in case law or the record showing that lumbago differs in a meaningful way from the mild degenerative changes to the lumbar spine which the ALJ found severe.[4] Indeed, at the hearing, Plaintiff characterized the issue as "major disfunction . . . in his back," specifically the lumbar region. (R. 58).

While the records Plaintiff cites in support of lumbago as a severe impairment do not specifically use the term "lumbago" as a separate diagnosis, even if they did, a diagnosis of lumbago alone would not establish a severe or disabling impairment. *See Harrell v. Brown*, 862 F.2d 471, 481 (5th Cir. 1988); *Singleton v. Comm'r, Soc. Sec. Admin*, No. 6:20-cv-00931, 2021 WL 5239980, at *11 (W.D. La. Aug. 3, 2021), *report and recommendation adopted*., *Singleton v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-00931, 2021 WL 5237297 (W.D. La. Nov. 10, 2021) ("[I]t is axiomatic that a diagnosis is not sufficient to establish that an impairment is severe, to establish that an impairment meets or equals a listing, or to establish that an impairment is disabling."); 20 C.F.R. § 220.110(b). In large part these records reflect Plaintiff's treatment for low back pain. (ECF No. 17, p. 2, 3). First, Plaintiff references that he takes Tramadol for chronic back pain. (R. 42, 314, 448-50, 770-71). Next Plaintiff underwent opioid therapy for back pain treatment. (R. 850-56). Then, he points to an MRI showing a mild bulging disc consistent with the back pain. (R.

---

[4] The Court notes that "lumbago" is defined as "pain in the lumbar region," and "lumbar" refers to "the parts of the sides of the back between the thorax and pelvis." W.B. Saunders Co., *Dorland's Illustrated Medical Dictionary* 1029 (Douglas M. Anderson et al. eds., 29th ed. 2000).

6

693-95). Finally, Plaintiff received a lumbar spine injection to reduce back pain. (R. 729-32). Moreover, in fashioning the light work RFC, the ALJ factored in Plaintiff's reports of pain and associated low back symptoms. (R. 20-21). Thus, to the extent Plaintiff argues the ALJ should have found his back pain severe, the ALJ already delivered a favorable outcome through finding that Plaintiff's mild degenerative changes of the lumbar spine constituted a severe impairment. (R. 14). In sum, the record fails to support Plaintiff's contention that the ALJ disregarded medical evidence of lumbago.[5]

For the above reasons, the Court finds that substantial evidence supports the ALJ's RFC determination as it relates to Plaintiff's lumbago argument.

**B. Substantial evidence supports the RFC determination because the ALJ did not disregard medical evidence of frontal lobe dementia and major depression.**

Plaintiff also argues that the ALJ erred in failing to incorporate "the evidence of organic brain syndrome frontal lobe dementia" and major depression as severe impairments, which also undercut the RFC finding.[6] (ECF No. 17, p. 3). A special set of criteria is used to determine whether mental impairments rise to the level of severe. 20 C.F.R. § 404.1520a(a). The special criteria evaluates a claimant's functional limitation in four broad functional areas: (1) understanding, remembering, or applying information, (2) interacting and relating with others, (3) concentrating, persisting, and maintaining pace, and (4) adapting and managing oneself. *Id.* § 404.1520a(c)(3). If

---

[5] The Court notes that Plaintiff points to the ALJ's August 2018 decision where the ALJ identified lumbago as a severe impairment. (ECF No. 17, p. 3). However, the Commissioner correctly identifies that the Appeals Council vacated that decision, and ordered further evaluation of Plaintiff's past relevant work. (ECF No. 20, p. 2) (R. 108-09). The Court concurs that the ALJ's evaluation of severe impairment at step two is not inconsistent with the Appeals Council's remand order. The Court further notes the inconsistency of Plaintiff's argument insofar as the 2018 decision found that Plaintiff could do medium work, while the present ALJ decision found light work. *Id.* at 3.

[6] Both Plaintiff and the Commissioner appear to use the terms "frontal lobe dementia" and "frontal lobe atrophy" interchangeably. *See* (ECF No. 17, p. 3); (ECF No. 20, p. 3, 6). For the sake of clarity, the Court will refer to this condition at "frontal lobe dementia."

the degree of limitation is rated as "mild" or better in each category, the impairment is generally not severe. *Id.* § 404.1520a(d)(1).

Applying the criteria, the ALJ found that Plaintiff had mild restrictions in each of the four categories. (ECF No. 20, p. 3). Without reciting the ALJ's findings at length, the Court notes that both the ALJ and the Commissioner scrutinized the record and cited to specific reports and examinations regarding mental impairment during the relevant time period, and the ALJ's decision did so in a comprehensive manner. (R. 15-17); (ECF No. 20, p. 3-5).[7] Moreover, the ALJ specifically noted that Plaintiff's self-reported short attention span conflicted with his regular activities like reading and watching television. (R. 16). In fact, a 2017 psychiatrist examination noted improvement in his depression, and at that time Plaintiff reported a positive mental status, as well as functional concentration and immediate memory. *Id.*

In support of his argument, Plaintiff marshals evidence of his diagnoses of and treatment for both major depression and frontal lobe dementia. (ECF No. 17, p. 3). However, Plaintiff wholly fails to address the special psychiatric criteria formulated specifically for mental impairment severity evaluation. *Id.* at 4. While Plaintiff cites evidence of diagnoses and treatment, he does not connect that evidence to any alleged error by the ALJ in application of the four-part mental impairment criteria. Further, upon its own review of the record, the Court notes that in 2018, Plaintiff's depression screen was negative, and that in 2019, Plaintiff denied memory loss and suicidal thoughts. (R. 793, 838). In sum, the record fails to support Plaintiff's position that the ALJ

---

[7] As to the first domain, Plaintiff reported that he could manage money and personal affairs without reminders. (R. 16, 305-306). In 2017, Plaintiff reported functional memories (R. 16, 156), along with an examination revealing that Plaintiff had no recent or remote memory impairment. (R. 750). Regarding the second category, from 2017-2019 Plaintiff presented as cooperative and receptive (R. 16-17, 517, 612, 785), and denied interpersonal problem including at work. (R. 16, 292-93, 307-08, 334, 516). In the third area, Plaintiff reported functional concentration (R. 16, 516, 543, 606, 701), and examinations showed normal attention and concentration (R. 750). Finally, Plaintiff could prepare food, do basic chores, drive, shop, and go out alone (R. 16, 305-06), and 2017 status examinations showed judgment, insight, and impulse control (R. 16-17, 517, 612).

disregarded medical evidence of frontal lobe dementia and major depression. It is not clear to the Court what error Plaintiff alleges the ALJ committed in the four-step test of the evidence presented.

For the above reasons, the Court finds that substantial evidence supports the ALJ's RFC determination as it relates to Plaintiff's mental impairment argument.

**C. Substantial evidence supports the RFC determination because the ALJ considered Plaintiff's ability to perform sustained work on a regular and continuing basis.**

Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ allegedly failed to discuss Plaintiff's ability to perform sustained work activities on a regular and continuing basis. (ECF No. 17, p. 5). Plaintiff argues the ALJ failed to consider Plaintiff's impairments alone and in combination with exertional and non-exertional factors, such that Plaintiff cannot perform light work.[8] *Id.* However, the only specific fact Plaintiff says the ALJ failed to consider is his ability to drive on a full-time basis. *Id*.

Review of the evidence does not support Plaintiff's allegations as to this point of error. The Court notes at least three instances where the ALJ considered Plaintiff's ability to do regular work on a sustained basis. (R. 19-21). The first reference arises in the ALJ's discussion of Plaintiff's employment since the alleged onset. (R. 19). The second reference appears in the ALJ's analysis regarding the "time-relevant medical evidence" as being inconsistent with Plaintiff's disability claims. (R. 20). Finally, the third reference arrives in the ALJ's finding that Plaintiff can do physical activities and has the mental ability "required for sustained work activity." (R. 21). Moreover, the ALJ specifically considered Plaintiff's testimony that he was able to drive,

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

"although he did not drive long distances." (R. 20). Thus, the ALJ did not fail to conduct the analysis Plaintiff alleges.

Further, the medical and testimonial evidence shows that the ALJ considered the exertional and non-exertional factors. Initially, an examination showed full range of motion in the low back, passing straight leg raise, normal gait, and full range of motion. (R. 20, 449). In 2016 and 2017, lumbar scans showed minimum to mild degenerative changes in Plaintiff' lumbar spine. (R. 20-21, 419, 647, 695). Notably, after Plaintiff's lumbar steroid injection in December 2017, treatment notes indicated that Plaintiff could do light duty work the following day, and resume regular activity two days after. (R. 21, 684). Examinations in 2018 further documented complaints of back and joint pain, but no weakness or swelling, normal ambulation, and appropriate affect (R. 21, 785-87 793-94, 831-33). Plaintiff also indicated he was satisfied with his pain treatment in 2018. (R. 837). Similarly, under the non-exertional factors, the ALJ accounted for Plaintiff's stated proficiency in remembering his medication, handling his money, going out alone, reading books, and watching television, along with his normal neurological examination in 2017. (R. 20-21). Consideration of these factors is consistent with the RFC determination that Plaintiff is not disabled from all work activity.

The ALJ also accounted for Plaintiff's ability to work on a continued basis when examining the non-medical evidence. Two State agency medical consultants who reviewed Plaintiff's 2016 and 2017 medical records opined that Plaintiff could perform medium work, in contrast to the ALJ's more restrictive light work finding.[9] (ECF No. 20, p. 8); (R. 21, 80, 87-88); 20 C.F.R §

---

[9] "Dr. Ligon opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, sit for about 6 hours in an 8-hour workday; and stand/walk for about 6 hours in an 8-hour workday (Tr. 21, 80)" with no recommended limitations. (ECF No. 20, p. 8). Further, "[i]n January 2017, Dr. Herman recommended the same limitations (Tr. 21, 87-88). These opinions, consistent with medium work, support the ALJ's finding that Plaintiff could perform light work (Tr. 18, 21, 80, 87-88)." *Id.*

404.1567(b-c). Further, Plaintiff's part-time work and earnings therefrom were properly considered, including his testimony that he works between eighteen and twenty-four hours per week. (R. 19, 59); *see Murray v. Astrue*, 419 F. App'x, 539, 541 (5th Cir. 2011) (allowing the ALJ to consider Plaintiff's part-time work assisting her neighbor during the period she claimed to be disabled in evaluating substantial evidence). Finally, the ALJ factored Plaintiff's reported daily activities of chores, meals, shopping, walking, and driving into the light work determination. (R. 18-20, 304-308); *see Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995) (internal citation omitted) (considering Plaintiff's ability to care for his daughters, do household chores, and cut grass in denying disability). This evidence also does not support finding that Plaintiff is disabled from all work activity.

For the above reasons, the ALJ's RFC determination is supported by substantial evidence.

**D. Plaintiff's legal error argument fails to show that the ALJ erred in the RFC finding.**

Finally, Plaintiff contends that the ALJ rejected or gave little weight to a treating specialist's opinion pursuant to *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). (ECF No. 17, p. 5). In turn, the Commissioner contends that Plaintiff has not properly raised the issue because he failed to identify which treating source opinion(s) the ALJ allegedly declined to give weight, or where in the record these rejected opinions supposedly appear. (ECF No. 20, p. 10, n. 2). Assuming that Plaintiff is referring to the "treating physician rule," the Court notes that while this doctrine was in effect at the time Plaintiff filed his disability application, it was later repealed on March 17, 2017 such that treating physician opinions now receive no deference. 20 C.F.R. § 404.1520(c)(a). Notwithstanding, the Court finds that Plaintiff has not properly raised the issue. Plaintiff has wholly failed to develop a cognizable argument in terms of which opinions the ALJ supposedly rejected regarding which medical conditions. Plaintiff cites no alleged instances for the Court to

11

consider in this regard. *See Hardman v. Colvin*, 820 F.3d 142, 152 (5th Cir. 2016) (citing *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005)) (stating that "[a] party must 'press and not merely intimate the argument during proceedings before the district court.'").

For the above reasons, the Court finds that the ALJ's finding is not the result of legal error.

## III.   CONCLUSION

In sum, the Court finds that Plaintiff has not demonstrated that the ALJ failed to consider his lumbago and mental impairments in formulating the RFC such that he cannot perform the requirements of the light work. The Court also finds that Plaintiff's arguments regarding his ability to perform sustained work activities on a regular and continuing basis and legal error fail as well. The Court further finds that the ALJ properly considered the objective medical evidence, Plaintiff's own testimonial evidence, as well as the vocational expert testimony in reaching his decision. Accordingly, the Court finds that substantial evidence supports the ALJ's findings regarding Plaintiff's RFC, and the ALJ applied the correct legal standards.

For the foregoing reasons, **IT IS HEREBY ORDERED** that the decision of the Commissioner denying benefits will be **AFFIRMED**.

**SIGNED** and **ENTERED** this __31__ day of March, 2022.

_____
**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**